UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
PAMELA J. CLARK-GYLLENBOGA,
as administrator of the
Estate of Michael Clark,

                      Plaintiff,          12-CV-0538(MAT)

          v.                                **DECISION**
                                                  **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                      Defendant.
_____

## INTRODUCTION

Pamela J. Clark-Gyllenboga ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) on behalf of her deceased brother, Michael Clark ("Clark") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying Clark's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1]

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##9, 11.

## BACKGROUND

Clark filed applications for DIB and SSI on April 2, 2008, alleging disability since March 14, 2008, due to herniated discs

---

[1] Clark died on June 4, 2013, while this action was pending. Dkt. #16. Upon motion, Hon. Kenneth Schroeder, Jr., M.J., ordered that Pamela J. Clark-Gyllenboga, as executor of the Estate of Michael Clark, be substituted as a plaintiff in place of Michael Clark on November 27, 2013. Dkt. #20.

and depression. T. 102-12, 138. His applications were initially denied, and a hearing was held before Administrative Law Judge ("ALJ") Timothy M. McGuan in Buffalo, New York on May 18, 2010. Clark, who appeared with counsel, testified before the ALJ. T. 29-38. After reviewing Clark's case, the ALJ found: (1) Clark did not engage in substantial gainful activity during the relevant period; (2) his substance abuse disorder, herniated disc in the lumbar spine, degenerative disc disease, facet degenerative changes, and drug and alcohol abuse with related depression were severe impairments within the meaning of the Regulations; (3) Clark's impairments, including substance abuse disorder, met Listings sections 12.09 and 12.04, 20 C.F.R., Part 404, Subpart P, Appx. 2, and that Clark was disabled. T. 14-15.

The ALJ further found that Clark's substance abuse was a contributing factor material to a finding of disability, and therefore he was not entitled to receive DIB or SSI in accordance with 42 U.S.C. §§ 423(d)(2)(C), 1382c(3)(J). The ALJ found that had Clark stopped his alcohol abuse, he would still have severe impairments, but would not have an impairment or combination of impairments that met or equaled the Listings, and would retain the residual functional capacity ("RFC") to perform the full range of light work. T. 15-16. He then found that Clark could not perform his past relevant work as a truck driver because the exertional requirements of that job exceeded his RFC. The ALJ concluded that

based on Clark's age, education, and RFC, there would be a significant number of jobs in the national economy that he could perform, and Medical-Vocational Guidelines directed a finding of not disabled. T. 23-24.

An unfavorable decision was issued on July 16, 2010. T. 11-24. The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Clark's request for review on April 11, 2012. T. 1-4. This action followed. Dkt. #1.

The Commissioner moves for judgment on the pleadings on the grounds that substantial evidence supports the Commissioner's final decision that Clark was not disabled during the period at issue. Comm'r Mem. (Dkt. #10) 1-24. Plaintiff has filed a cross-motion alleging that the ALJ erred in properly evaluating and weighing the medical opinion evidence, and did not properly assess Clark's subjective complaints. Pl. Mem. (Dkt. #11-1) 14-18.

For the following reasons, the Commissioner's motion is granted, and the Plaintiff's cross-motion is denied.

## DISCUSSION

I. **Scope of Review**

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

## II. **Standard for Entitlement to Benefits**

To establish disability under the Social Security Act, a claimant bears the burden of demonstrating (1) that she has been unable to engage in substantial gainful activity by reason of a physical or mental impairment that has lasted or could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment has been demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. 42 U.S.C. § 1382c(a)(3); see also Barnhart v. Walton, 535 U.S. 212, 215 (2002).

In determining whether or not an individual is disabled, the Social Security Administration requires the ALJ to engage in the following five-step evaluation:

> (1) if the claimant is performing substantial gainful work, he is not disabled;
>
> (2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;
>
> (3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

> (4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is disabled;
>
> (5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

In analyzing a case involving drug or alcohol addiction, the ALJ must first determine whether the claimant is disabled. See 20 C.F.R. § 416.935(a). The ALJ must reach this determination initially using the standard five-step approach described above without segregating out any effects that might be due to substance abuse disorders. If the inquiry suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the alcohol addiction are absent. If, in following the five-step sequential analysis, the claimant would still not be disabled considering the remaining limitations, then alcohol or drug addiction is a contributing factor material to the determination of disability and the individual is not considered disabled for the purposes of the Act. See 20 C.F.R. § 416.935(b)(2).

In addition, if the record shows substance abuse, "it is the claimant's burden [to] prove that substance abuse is not a

contributing factor material to the disability determination." Badgley v. Astrue, 2009 WL 899432, at *4 (W.D.N.Y. March 27, 2009).

## III. Medical Evidence[2]

### A. Treatment Records Prior to the Relevant Period

An x-ray of Clark's lumbar spine in March 2007 revealed low-grade degenerative spondylosis at L4-5 and L5-S1 levels, no evidence of compression fracture or spondylosis. T. 208. In the same month, Dr. James Panzarella assessed Clark with backache, unspecified. T. 269-70. In October, 2007, Dr. Panzarella noted mild decreased L5-S1 range of motion and assessed low back pain. T. 271. On February 21, 2008, Clark's physical examination was unremarkable with no signs of acute distress, except for limited range of motion with discomfort. T. 273. The following month, Clark requested Valium to detoxify and stated that he drank a quart of vodka daily. T. 275. If he did not drink, he went through delirium tremens. He stated that he did not want to attend Alcoholics Anonymous, and could not go to inpatient treatment for his alcoholism because there was no one to care for his dog. Id. On examination, Clark appeared malnourished and smelled of alcohol. T. 275. Dr. Panzarella advised inpatient detoxification. Id.

---

[2] The record contains irrelevant medical records pertaining to another applicant with the same name, which both parties reference in their submissions to the Court. T. 347-55, 360-404. To avoid any further undue delay, the Court will disregard the erroneously-submitted records as they were not considered by the ALJ in his decision and do not change the Court's analysis on the present motions.

## B.   Treatment Records from the Relevant Period

On March 18, 2008, Clark underwent a right L5 epidural steroid injection and "left the facility in good condition" with re-evaluation scheduled in several weeks. T. 277. That procedure was repeated the following month. T. 279.

A magnetic resonance image of Clark's lumbar spine in April of 2008 revealed degenerative changes of the spine, central disc herniation LS-S1 superimposed upon underlying disc bulge, disc bulge with shallow far right lateral disc herniation L4-5, facet degenerative changes asymmetric, right greater than left L4-5 and to a less degree L3-4. T. 281-82.

Clark was seen for a psychiatric consultative examination on May 22, 2008, by Thomas Ryan, Ph.D. T. 283-87. Clark reported that he was not in counseling, denied depression, and stated that he drank three to four drinks daily, sometimes more. T. 283. On examination, Dr. Ryan found that Clark's attention, concentration, and memory skills were intact; cognitive functioning was average; insight and judgment were somewhat poor; and he was able to care for his personal needs. T. 284-85. He micro-waved his food and did household chores. He did not visit with friends but had some contact with family. Dr. Ryan diagnosed Clark with alcohol abuse, with moderate limitation in his ability to make appropriate decisions. T. 285.

The same day, Clark underwent a consultative examination with Kathleen Kelley, M.D., who observed that Clark had normal gait, could not walk on his heels and toes, his lumbar spine examination was limited, lumbar spine rotation was full bilaterally, straight leg raising on left and right was 50 degrees with full strength in all four extremities. T. 289. Clark's neurologic examination revealed absent upper extremity deep tendon reflexes bilaterally, deep tendon reflexes of lower extremities and ankle jerks were positive and physiological, with no motor or sensory deficits noted. T. 290. Dr. Kelley diagnosed Clark with "questionable depression, but claimant states no; herniated disk per Clark; nonspecific dizziness, etiology unclear; status post left hand surgery with no functional limitation noted; and open right shoulder surgery with full range of motion on examination." Id. Clark's limitations were lifting, carrying, reaching, pushing/pulling for markedly heavy objects; repetitive twisting or bending and standing or walking without appropriate breaks may aggravate his back pain symptoms. T. 290-91. Due to dizziness, Clark should avoid heights, and working with heavy equipment and sharps. T. 291.

On May 29, 2008, Clark was admitted to the Veteran's Administration ("VA") for treatment of alcohol dependence. T. 312-34. He reported no physical limitations and was able to walk more than a mile slowly and without difficulty. T. 335. He drank up to

one quart of vodka daily for the past few years, which increased when he lost his job in March of 2008. T. 312-13. Abstention from alcohol resulted in withdrawal symptoms, including shaking. T. 312. Clark denied depressive symptoms. Id. His past history showed multiple admissions at the VA for alcohol dependence and depressive disorder, not otherwise specified. Id. Clark was stabilized, offered supportive therapy, and placed on Ativan. T. 313. At discharge on June 4, 2008, Clark was sober, had logical and goal-directed thoughts, and planned to contact a vocational rehabilitation consultant. T. 312-14, 327-28.

Progress notes from the VA dated July 2008 indicate that Clark was re-establishing care after being admitted one month prior for alcohol detoxification. T. 725. He reported problems with a herniated disc and complained of numbness and tingling in both legs, which came on gradually and had been progressive. He also had intermittent back pain. Id. The examining physician assessed lower extremity numbness and tingling, which could be radiculopathy from his back and/or alcoholic polyneuropathy. T. 727. Clark was sent for EMG/NVC testing, which indicated evidence of bilateral lower extremity peripheral polyneruopathy of the demyelinating and axonal types, and no evidence of lumbosacral radiculopathy. T. 722-24.

Clark went for a neurosurgical consultation with Dr. Jeffrey Lewis on April 11, 2009. T. 357-59. He stated that he drank 10-15 alcoholic beverages and had been treated for alcohol abuse. T. 357.

Dr. Lewis noted ongoing back issues for a number of years, and chiropractic, physical therapy, and conservative treatment no longer provided relief. Id. Clark took no medication. Id. Examination showed fairly good range of motion of the cervical and lumbar spine, with normal gait and station. T. 358. He had 2+ reflexes bilaterally in the upper and lower extremities, full muscle strength, and straight leg raising was negative bilaterally. The doctor reviewed his MRI scan and opined that Clark had a 100% temporary impairment. Anterior lumbar total discectomy and placement of an artificial disc at L5-S1 was recommended, but Clark stated that he would like to take some time to consider the procedure. T. 359.

Clark was again admitted to the VA on May 3, 2009, for alcohol dependence and low back pain. T. 412-16. He reported that he had detoxed several times and he remained sober for three to four months after his last admission in June of 2008. T. 413. His history of alcohol dependence dated back to his teenage years, and he reported one period of sobriety for approximately one year. Clark's insight and judgment were impaired. It was noted that Clark had a previous hospital admission in the 1980s for a suicidal attempt by cutting his arm and had been prescribed Antabuse and Zoloft, but did not see an outpatient psychiatrist. T. 413. He was detoxed and discharged on May 9, 2009. T. 412, 414, 598.

Two weeks later, Clark was referred for medication management following successful completion of detoxification. At that time, he was motivated to stay sober and was looking for work at the VA. He denied being depressed and was hopeful about his future. T. 596. Clark stated that his biggest trigger was sitting idle at home. Id. On examination, Clark was alert, oriented, and cooperative with linear, coherent thought process. T. 597. Judgment and insight were fair with no suicidal or homicidal ideation. Id. Clark was diagnosed with alcohol dependence in early partial remission; major depression, recurrent, mild to moderate without psychotic symptoms; and was assessed with a Global Assessment of Functioning ("GAF") score of 65, indicating "[s]ome mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." See Diagnostic and Statistical Manual of Mental Disorders 4th Ed. ("DSM IV-TR")(2000) at 34; T. 597.

Throughout the month of May, Clark reported to his case manager at the VA. 590-91, 598-99. His mental status examinations were unremarkable, and he was maintaining his sobriety. Id. Clark was compliant with his medications. Id.

Clark underwent a physical therapy evaluation ("the Functional Assessment") at the VA on June 11, 2009. T. 579. He denied pain, was able to walk three miles per day, stand one hour at a time,

could climb stairs for five minutes, kneel occasionally, could reach above his shoulder, had no restrictions with his hands, and had good upper and lower extremity coordination. It was noted that "no symptoms were produced per patient." Id.

Progress notes from the VA dated June 16 2009, showed that Clark had not had alcohol, was compliant with medication, and denied suicidal/homicidal ideation. T. 575. He did, however, express worry over his financial situation. Id.

A month later, Clark was admitted to the VA for alcohol dependency after drinking a half-quart of vodka. T. 544-550. He was examined, treated, given medication, and discharged in "improved" condition. T. 551. He reported being sober at follow-up visits in August and September, 2009. T. 482-491, 501. Clark was placed on a suicide prevention high risk list due to ongoing stressors. Id.

On November 15, 2009, Dr. Lewis recommended an artificial lumbar disc at L5-S1 as the best surgical option for Clark. T. 405. The doctor also indicated that for pain management, Clark would need to see a pain management physician. Id. He opined that Clark was "disabled since his work injury of 3/14/08 and has not been able to work." Id.

Clark was admitted to the VA again on April 29, 2010 for alcohol abuse. T. 407-11, 427-41. He was drinking vodka daily and was intoxicated at his initial appointment. T. 408, 427, 429-30. He

had no delirium tremens, no seizures, and was discharged on Lorazepam and was to resume his anti-depressant medication. T. 411.

Progress notes from the VA dated May 11, 2010 indicate a psychiatric evaluation follow-up for depression and alcohol dependence. T. 738-41. Clark had recently completed a six-day detox, and his mood had been good without drinking for weeks. Id. He reported previously drinking one quart of vodka per day and his longest period of sobriety was one year during the 1990s. T. 747. Clark stated that he benefitted from counseling, exercised a little, and was looking into fishing again. T. 484, 461, 738. It was noted that Clark "continued use of drugs or alcohol despite knowledge of experiencing persistent or recurring physical, vocational, social, relationship problems that are directly caused by the use of the substance." T. 739.

### III. **Testimonial Evidence**

Clark was 51 years-old on the date of his hearing, and had obtained a General Equivalency Diploma while serving in the military. T. 34. He last worked as a truck driver from 1996 to 2007. Id. He stopped working on March 14, 2008, due to back pain. Since then, he described having "crippling" pain that was "intense, dull, sometimes shooting, sharp," and that worsened with prolonged sitting and standing. T. 39-40. Clark was able to stand for 20 minutes, sit for 10-15 minutes, and could lift and carry about 15 pounds, but not repetitively. T. 38-40. He slept for five hours

per night and did not nap during the day. T. 42. He lived alone in a small apartment and could not perform household chores like vacuuming without resting. T. 43. Clark told the ALJ that disc replacement surgery was recommended, but he was apprehensive because it was intrusive and he had no family to help take care of him. T. 45. He testified that the "shots seem to work" for his back pain. Id.

## IV. The Decision of the Commissioner that Plaintiff was not disabled was supported by Substantial Evidence.

### A. Treating Source Opinion

Plaintiff contends that the ALJ erred in not properly evaluating and weighing Dr. Lewis' opinion that Clark had been disabled since March 14, 2008. Pl. Mem. 14-16.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). However, "the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999), citing 20 C.F.R. § 404.1527(d)(4).

The Commissioner need not grant controlling weight to a treating physician's opinion to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. See

14

20 C.F.R. § 404.1527(d)(1); Snell, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Here, the ALJ reviewed all of the opinion evidence, and stated that he "relied on the medical records from the VA, the consultative examiners, Dr. Lewis, and the findings at the functional capacity evaluation, which are consistent with the evidence of record and the ability to perform light work." T. 23.

Given that the determination of whether an individual is disabled is unequivocally a matter reserved for the Commissioner, the ALJ was not required to address Dr. Lewis' opinion that Clark had a "100% temporary impairment" and was disabled. T. 405-06. Moreover, Dr. Lewis' opinion of disability was made in the context of a workers' compensation claim, which uses different standard than the Social Security Act. See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y. 1994), citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) ("an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); Crowe v. Comm'r, 2004 WL 1689758, at *3 (N.D.N.Y. 2004) (ALJ not required to adopt treating physician's opinion that plaintiff was "totally" disabled where opinion was rendered in worker's compensation claim context).

Although the ALJ did not weigh Dr. Lewis' opinion, "courts have found harmless error where the ALJ failed to afford weight to a treating physician when an analysis of weight by the ALJ would

15

not have affected the outcome." Ryan v. Astrue, 650 F.Supp.2d 207, 217 (N.D.N.Y. 2009); see Jones v. Barnhart, No. 02 Civ. 0791, 2003 WL 941722, at *10 (S.D.N.Y. Mar.7, 2003) (finding harmless error in the ALJ's failure to grant weight to Plaintiff's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them"). The ALJ thoroughly discussed the treatment records from Dr. Lewis' office from April and November, 2009, and observed that the examination results were largely unremarkable. This evidence, along with the diagnostic test results, physician treatment notes, and the consultative examinations were all consistent in supporting the RFC finding that Clark could perform light work. T. 22-23. Significantly, Dr. Lewis did not opine as to Clark's specific functional limitations, in contrast with the Functional Assessment from the VA that indicated no physical limitations. T. 23, 405-06, 579. Thus, a specific assignment of weight would not have impacted the outcome of the ALJ's decision, and any error by the ALJ in this regard is harmless.

Finally, Plaintiff suggests that the Functional Assessment should have been rejected because it was performed by a physical therapist. Pl. Mem. 16. Although not an "acceptable medical source," under the Social Security Regulations, 20 C.F.R. § 404.1513(a), a physical therapist is considered an "other source," whose assessment should be given some weight, especially

when there is a treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y. 1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight). Here, Clark's Functional Assessment was performed as part of his extensive treatment at the VA and is consistent with the other medical evidence of record. The ALJ therefore properly considered and relied upon that opinion.

For these reasons, remand is not warranted based on the ALJ's evaluation of the treating source opinions.

**B.   Credibility Assessment**

Plaintiff also challenges the ALJ's credibility determination, alleging that he should have afforded Clark's subjective complaints of back pain "great weight," and that he improperly evaluated Clark's daily activities. Pl. Mem. 16-18.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a

medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling 96-7p, (July 2, 1996), 1996 WL 374186, at *7. It is well within the Commissioner's discretion to evaluate the credibility of a plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

"If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia,

Valente v. Sec'y of HHS, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

In his decision, the ALJ credited Clark's testimony with regard to his extensive alcohol abuse and dependence, and found that his complaints of back pain were not supported by the objective medical evidence to the extent alleged. T. 22. In reaching this determination, he considered the objective medical findings of record, which showed full muscle strength, negative straight leg raises, and no lower extremity complaints. T. 22, 290, 358, 364, 369, 387, 397, 590-91, 726. EMG testing in July, 2008, did not reveal lumbar radiculopathy. T. 22. During his Functional Assessment in June, 2009, Clark exhibited no symptoms. Id. The ALJ also noted Clark's hearing testimony, which indicated that he declined surgery, felt that past epidural injections were effective, and that he would like to try them again. Id.

Moreover, the clinical and diagnostic findings were modest when Clark's alcohol abuse were removed from consideration. Clark did not allege depression except for when he was drinking. He had strong daily activities during periods of abstinence (walking his dog, walking up to three miles per day, taking care of his apartment, and showing interest in vocational rehabilitation), and he repeatedly stated that he was not depressed and felt better when he was not drinking. T. 23, 368, 590-91, 596-99, 738. Accordingly, the Court finds that the ALJ's credibility determination was proper

as a matter of law and supported by substantial evidence in the record.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.#9) is granted, and Plaintiff's cross-motion for judgment on the pleadings (Dkt.#11) is denied. The ALJ's finding that Plaintiff was not disabled was supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         May 7, 2015